**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | | |
|---|---|---|---|
| ANA MARIA SARCENO REYES, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 16-0852 (RC) |
| | : | | |
| v. | : | Re Document No.: | 14 |
| | : | | |
| KIMMOTI KIMUELL, *doing business as* *Burrito Brothers*, | : | | |
| | : | | |
| | : | | |
| Defendant. | : | | |

**MEMORANDUM OPINION**

GRANTING PLAINTIFF'S MOTION FOR ENTRY OF DEFAULT JUDGMENT

**I. INTRODUCTION**

Ms. Ana Maria Sarceno Reyes sued Mr. Kimmoti Kimuell, doing business as Burrito Brothers, alleging that he failed to pay her statutorily required overtime wages. After Mr. Kimuell failed to appear, file an answer, or otherwise respond to the complaint, the Clerk's office entered a default against him. Ms. Sarceno Reyes now moves for a default judgment pursuant to Federal Rule of Civil Procedure 55(b)(2) in the amount of $117,031.24 in damages, $3647 in attorneys' fees, and $500.94 in costs. Because Ms. Sarceno Reyes has met her evidentiary burden, the Court grants Ms. Sarceno Reyes's motion but reduces the damages award to correct several errors.

## II.  FACTUAL BACKGROUND[1]

Ms. Sarceno Reyes worked for Mr. Kimuell as a cook and food preparer[2] from June 15, 2010, through March 29, 2016. Pl.'s Rule 55(b)(2) Mot. Entry Default J. (Pl.'s Mot.) at 2, ECF No. 14. According to Ms. Sarceno Reyes, her hourly wage during the applicable period was:

| Time Period | Hourly Wage |
| --- | --- |
| March 16, 2013 to July 4, 2014 | $ 9.00 |
| July 5, 2014 to July 3, 2015 | $ 9.50 |
| July 4, 2015 to March 29, 2016 | $ 10.50 |

Sarceno Reyes Decl. at ¶ 2, ECF No. 14-1. According to Ms. Sarceno Reyes, she worked "an average of sixty (60) and seventy-five (75) hours per week" but was never paid overtime for hours worked in excess of forty hours each week. Sarceno Reyes Decl. at ¶ 3. According to Ms. Sarceno Reyes's counsel, Ms. Sarceno Reyes worked "approximately 81.25 hours in one week and 78.50 hours in the next week" from March 16, 2013 to February 27, 2015, and "approximately 66.50 hours in one week and 64 hours in the next week" from February 28, 2015 to March 29, 2017. 2d Lombardo Aff. ¶ 1, ECF No. 15-1. Based upon these figures, Ms. Sarceno Reyes claims she is owed "approximately $29,257.81" in unpaid overtime wages. Sarceno Reyes Decl. at ¶ 4.

Ms. Sarceno Reyes's Complaint sought damages under three different statutes: the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* (FLSA); the D.C. Wage Payment and Collection Law, D.C. Code § 32-1301, *et seq.* (DCWPCL), and the D.C. Wage Revision Act, D.C. Code

---

[1] Because Mr. Kimuell has not responded, the Court treats the allegations of the complaint as admitted, except as to the amount of damages. Fed. R. Civ. P. 8(b)(6).

[2] Ms. Sarceno Reyes's complaint states that she was a "cook/food preparer." Compl. 1, ECF No. 1.

§ 32-1003, *et seq.* (DCMWRA). Compl. 1, ECF No. 1. Mr. Kimuell did not appear or answer within the first 21 days after being served with the complaint, or thereafter. *See* Proof of Service, ECF No. 11; Fed. R. Civ. P. 12(1)(A)(i) (requiring a defendant to "serve an answer within 21 days of being served with a summons"). The Clerk of Court therefore entered a default against Mr. Kimuell. Default, ECF No. 13. Ms. Sarceno Reyes now requests that this Court enter a default judgment against Mr. Kimuell in the amount of $29,257.81 in unpaid wages and treble damages of $87,773.43 under the DCWPCL (for a total of $117,031.24 in damages), as well as $3647 in attorneys' fees and $500.94 in costs. Pl.'s Mot. at 6, ECF No. 14; Pl.'s Supp'l Sub., ECF No. 15.[3]

### III. ANALYSIS

Ms. Sarceno Reyes seeks a default judgment based on Mr. Kimuell's failure to respond. The Court may enter a default judgment in accordance with Rule 55 of the Federal Rules of Civil Procedure. Default judgment is appropriate when the defendant is an "essentially unresponsive party" whose default is "plainly willful, reflected by its failure to respond to the summons or complaint, the entry of default, or the motion for default judgment." *Carazani v. Zegarra*, 972 F. Supp. 2d 1, 12 (D.D.C. 2013) (internal citations omitted). The Court may enter a default judgment when a defendant "makes no request to set aside the default" and "gives no indication of a meritorious defense." *Ventura v. L.A. Howard Constr. Co.*, 134 F. Supp. 3d 99, 104 (D.D.C. 2015) (quoting *Int'l Painters & Allied Trades Indus. Pension Fund v. Auxier Drywall, LLC*, 531 F. Supp. 2d 56, 57 (D.D.C. 2008)).

---

[3] Although Ms. Sarceno Reyes initially sought additional legal fees, she adjusted her request to $3647.00. Pl.'s Supp'l Sub. ¶ 2.

Here, Mr. Kimuell has not responded to the summons, complaint, entry of default, or motion for default judgment, and entering a default judgment against him is therefore appropriate. *See Serv. Employees Int'l Union Nat. Indus. Pension Fund v. Artharee*, 942 F. Supp. 2d 27, 29–30 (D.D.C. 2013) ("Where, as here, there is a complete 'absence of any request to set aside the default or suggestion by the defendant that it has a meritorious defense, it is clear that the standard for default judgment has been satisfied.'" (quoting *Int'l Painters & Allied Trades*, 531 F. Supp. 2d at 57)). The Court therefore finds that entry of a default judgment is appropriate.

However, although "[a] default judgment establishes the defaulting party's liability for every well-plead allegation in the complaint," it does not "automatically establish liability in the *amount* claimed by the plaintiff." *PT (Persero) Merpati Nusantara Airlines v. Thirdstone Aircraft Leasing Grp., Inc.*, 246 F.R.D. 17, 18 (D.D.C. 2007) (emphasis added) (citing *Adkins v. Teseo*, 180 F. Supp. 2d 15, 17 (D.D.C. 2001) and *Shepherd v. Am. Broad. Cos.*, 862 F. Supp. 486, 491 (D.D.C. 1994), *vacated on other grounds*, 62 F.3d 1469 (D.C. Cir. 1995)); *see also* Fed. R. Civ. P. 55(b)(2). Instead, "the Court is required to make an independent determination of the amount of damages to be awarded, unless the amount of damages is certain." *Serv. Employees Int'l Union*, 942 F. Supp. 2d at 30 (citing *Int'l Painters & Allied Trades Indus. Pension Fund v. Davanc Contracting, Inc.*, 808 F. Supp. 2d 89, 94 (D.D.C. 2011)). In doing so, a court need not conduct an evidentiary hearing if it can establish a basis for the amount of damages through detailed affidavits or other documentary evidence. *Flynn v. Mastro Masonry Contractors*, 237 F. Supp. 2d 66, 69 (D.D.C. 2002); *see also Embassy of the Fed. Republic of Nigeria v. Ugwuonye*, 945 F. Supp. 2d 81, 85 (D.D.C. 2013). With these principles in mind, the Court turns to determining the appropriate measure of damages and concludes that a basis for the damages can be established without a hearing.

### A. Award of Damages

Ms. Sarceno Reyes's claim for damages encompasses both a claim for unpaid wages and a claim for liquidated damages. The Court addresses each in turn. Ms. Sarceno Reyes claims that she is entitled to $29,257.81 in unpaid wages. Pl.'s Mot. at 2. Ms. Sarceno Reyes's counsel provided an Excel spreadsheet demonstrating how that figure was calculated. Excel Spreadsheet, ECF No. 15-1, Ex. A. According to Ms. Sarceno Reyes's counsel, Ms. Sarceno Reyes worked 159.75 hours in each two-week period from March 16, 2013 to February 27, 2015, and 130.5 hours in each two-week period thereafter. 2d Lombardo Aff. ¶ 1, ECF No. 15-1 (stating that Ms. Sarceno Reyes estimated that she worked "approximately 81.25 hours in one week and 78.50 hours in the next week" from March 16, 2013 to February 27, 2015, and "approximately 66.50 hours in one week and 64 hours in the next week" from February 28, 2015 to March 29, 2016).

Ms. Sarceno Reyes does not provide documentary evidence such as pay stubs or other records to support the hours she claims to have worked. However, because the employer is responsible for maintaining such records, courts are reluctant to penalize plaintiffs without documentation in cases where the employers have defaulted. *See Martinez v. China Boy, Inc.*, 229 F. Supp. 3d 1, 3 (D.D.C. 2016) ("In this case, where the plaintiff has not produced timesheets and the defendant has failed to respond, the Court will accept [the plaintiff's] declaration, submitted under the penalty of perjury, as to the hours she worked and wages she received . . . ."); *Encinas v. J.J. Drywall Corp.*, 840 F. Supp. 2d 6, 8 (D.D.C. 2012) ("[W]here the employer's records are inaccurate or inadequate . . . an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work *as a matter of just and reasonable inference*." (quoting *Arias v. U.S. Serv. Indus., Inc.*, 80 F.3d 509, 511 (D.C. Cir.

1996))); *see also Arias*, 80 F.3d at 512 ("The employer cannot be heard to complain that the damages lack the exactness and precision of measurement that would be possible had [it] kept records in accordance with the requirements of . . . the [FLSA]." (quoting *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 688 (1946))). The Court therefore proceeds based on Ms. Sarceno Reyes's recollection of the hours she worked.

The Court has examined Ms. Sarceno Reyes's spreadsheet, and agrees with its calculation of unpaid wages, except for what appears to be one computational error.[4] In addition, the Court notes that the applicable statute of limitations is three years, and thus has updated its calculations to ensure Ms. Sarceno Reyes does not recover for overtime worked more than three years before her complaint was filed on May 5, 2016. *See Ventura v. Bebo Foods, Inc.*, 738 F. Supp. 2d 8, 30 (D.D.C. 2010) ("The statute of limitations under both the DCWPCL and FLSA, however, is only three years. Because plaintiffs filed their complaint on April 11, 2008, [plaintiff] may only recover for FLSA and DCWPCL violations that occurred on or after April 11, 2005 . . . ." (citing 29 U.S.C. § 255(a) (2006) and D.C. Code § 32-1013)). For reasons concerning the calculation of liquidated damages, the Court divides its analysis of unpaid wages based on whether the work occurred before or after October 1, 2014, and calculates unpaid wages as follows:

---

[4] For the time period from March 30, 2013 to December 20, 2013, Ms. Sarceno Reyes's spreadsheet indicates that she worked 119.75 hours of overtime in each two-week period. Excel Spreadsheet, ECF No. 15-1, Ex. A. Instead, the Court understands the correct figure to be 79.75 hours of overtime (159.75 total hours worked in each two-week period, less the 80 normal-time hours) as shown in the other nearby rows. Excel Spreadsheet, ECF No. 15-1, Ex. A. The Court's corrected figures are shown in the table, and therefore the Court's total for unpaid wages is somewhat lower than Ms. Sarceno Reyes's. To the extent that the Court has adjusted Ms. Sarceno Reyes's request for damages in various ways, the Court notes that it "has considerable latitude in determining the amount of damages" for a default judgment. *Boland v. Elite Terrazzo Flooring, Inc.*, 763 F. Supp. 2d 64, 67 (D.D.C. 2011).

| ---Prior to October 1, 2014--- | | |
|---|---|---|
| **Time Period** | **Hourly Rate** | **Unpaid Wages** |
| May 11, 2013[5] to December 20, 2013 | $9.00 | $5742.08 |
| December 21, 2014 to July 4, 2013 | $9.00 | $5024.32 |
| July 5, 2014 to October 10, 2014[6] | $9.50 | $2651.67 |
| | | Total $13,418.07 |
| ---After October 1, 2014--- | | |
| **Time Period** | **Hourly Rate** | **Unpaid Wages** |
| October 11, 2014 to December 19, 2014 | $9.50 | $1894.05 |
| December 20, 2014 to February 27, 2015 | $9.50 | $1894.05 |
| February 28, 2015 to July 3, 2015 | $9.50 | $2158.92 |
| July 4, 2015 to December 18, 2015 | $10.50 | $3181.56 |
| December 19, 2015 to March 25, 2016[7] | $10.50 | $1855.91 |
| | | Total $10,984.49 |

Next, the Court analyzes liquidated damages. Both the FLSA and D.C. law provide for liquidated damages in addition to recovery for unpaid wages. The Court will, as Mr. Sarceno Reyes requests, assess liquidated damages under the DCWPCL, as it provides for more generous liquidated damages. Pl.'s Mot. at 6; *cf. Martinez v. Asian 328, LLC*, 220 F. Supp. 3d 117, 122 (D.D.C. 2016) ("Because [D.C. law] provides for greater liquidated damages than the FLSA, . . .

---

[5] To avoid the statute of limitations issue discussed above, the Court begins with the two-week period starting on May 11, 2013 instead of March 16, 2016.

[6] Rather than split up a two-week period, the Court treats the entire two-week period ending on October 10, 2014 as occurring before October 1, 2014 for liquidated damages purposes.

[7] Although Ms. Sarceno Reyes's spreadsheet continues through March 29, 2016, there are no unpaid overtime claims associated with the days after March 25, 2016, and the Court therefore omits them. Excel Spreadsheet, ECF No. 15-1, Ex. A.

7

the Court will first assess damages under D.C. law and will not award a duplicative amount pursuant to federal law." (quoting *Ventura v. L.A. Howard Constr. Co.*, 134 F. Supp. 3d 99, 104 (D.D.C. 2015))). D.C. law currently provides for liquidated damages "equal to treble the amount of unpaid wages." D.C. Code § 32-1012(b). For violations that occurred before October 1, 2014, however, D.C. law provided for only an unspecified "additional amount as liquidated damages." D.C. Code § 32-1012(a) (Dec. 24, 2013); *see also* Wage Theft Prevention Amendment Act of 2014, 2014 D.C. Laws 20-157 § 7(b) (stating that the current treble damages provision would take effect on October 1, 2014); *Martinez v. China Boy, Inc.*, 229 F. Supp. 3d 1, 3–4 (D.D.C. 2016). For violations prior to October 1, 2014, therefore, liquidated damages will be provided in the amount set by federal law, which is an amount "equal" to unpaid wages.[8] *See* 29 U.S.C. § 216(b); *see also China Boy, Inc.*, 229 F. Supp. 3d at 3–4. For unpaid wages both before and after October 1, 2014, the Court awards the full possible amount of liquidated damages because Mr. Kimuell has not demonstrated any of the factors which D.C. law states can reduce the liquidated damages award. D.C. Code § 32-1012(b)(2); *cf. China Boy, Inc.*, 229 F. Supp. 3d at 4–5. The Court therefore finds that a total damage award of $70,774.10 is appropriate, as shown in the following table:

| ---Prior to October 1, 2014--- | | |
|---|---|---|
| **Unpaid Wages** | **Liquidated Damages** | **Total Damages** |
| $13,418.07 | $13,418.07 | $26,836.14 |
| ---After October 1, 2014--- | | |
| **Unpaid Wages** | **Liquidated Damages** | **Total Damages** |
| $10,984.49 | $32,953.47 | $43,937.96 |
| | | **Total $70,774.10** |

---

[8] The Court's calculation of liquidated damages is therefore lower than Ms. Sarceno Reyes's suggested calculation, which trebled all of the unpaid wages.

**B. Award of Attorneys' Fees and Costs**

Ms. Sarceno Reyes requests $3647 in attorneys' fees. Pl.'s Mot. at 11, ECF No. 14; Exhibit A, 14-3; Pl.'s Supp'l Sub. ¶ 2, ECF No. 15. The FLSA and DCWPCL require that a prevailing plaintiff receive an attorneys' fee award. 29 U.S.C. § 216(b); D.C. Code § 32-1308(b). This fee must be "reasonable." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). A "reasonable" fee is calculated by multiplying the number of hours reasonably expended by a reasonable hourly rate. *Blum v. Stenson*, 465 U.S. 886, 888 (1984).

First the Court considers if counsel has billed for a reasonable number of hours. Ms. Sarceno Reyes bears the burden of establishing the reasonableness of the hours she seeks for reimbursement. *Herrerra v. Mitch O'Hara, LLC*, No. 16-1736, 2017 WL 2869410, at *5 (D.D.C. July 5, 2017) (citing *In re N. (Bush Fee Application)*, 59 F.3d 184, 189 (D.C. Cir. 1995)). Ms. Sarceno Reyes's counsel submitted detailed billing records. *See generally* Invoice, ECF No. 14-3, Ex. A. Based upon its examination of the billing records, the Court concludes that the hours billed by counsel were reasonable because counsel expended a reasonable amount of time on each task, were successful in all of their motions, and did not bill for duplicative work.

Next, the Court considers a reasonable hourly rate. Based upon Ms. Sarceno Reyes's supplemental briefing, Pl.'s Supp'l Sub., ECF No. 15, the Court understands that Ms. Sarceno Reyes seeks to recover only for work performed by Ms. Lombardo, Mr. Leiberman, and Mr. Garcia. As shown in the billing records, Ms. Lombardo billed at hourly rates of $440 and $460; Mr. Leiberman billed at hourly rates of $440 and $460; and Mr. Garcia billed at hourly rates of $295, $310, and $325. Ms. Lombardo stated in her affidavit that "[t]he rate charged in these matters is counsel's normal hourly rate and is in line with the customary fee in this area as well as the measures used by the federal courts." Lombardo Aff. ¶ 4E, ECF No. 14-2.

9

At the time the work for this litigation was performed, Ms. Lombardo and Mr. Lieberman each had more than sixteen years of experience and Mr. Garcia had approximately two years of experience. Several matrices, including the USAO Laffey matrix and the LSI Laffey matrix may assist courts in determining a reasonable hourly rate.[9] *See Ventura v. Bebo Foods, Inc.*, 738 F. Supp. 2d 8, 34 (D.D.C. 2010) (holding that "[f]or attorneys in the District of Columbia, the Laffey Matrix sets forth the reasonable range of attorneys' rates based on the respective attorney's level of experience" and awarding attorney's fees in a FLSA and DCWPCL case at the USAO Laffey Matrix rates). Other courts in this jurisdiction have concluded that the Laffey matrices suffice as evidence of the prevailing market rate in FLSA cases. *See, e.g., Al-Quraan v. 4115 8th St. NW*, LLC, 123 F. Supp. 3d 1, 3 (D.D.C. 2015) ("Many judges in this district rely on the Laffey matrix 'as an appropriate starting point for determining rates of reimbursing attorneys who bring cases under the FLSA.'" (quoting *Bradshaw v. Jefferson Grill, Inc.*, No. 11-1558, 2012 WL 2803401, at *2 (D.D.C. July 10, 2012))); *see also Ventura v. L.A. Howard Constr. Co.*, 139 F. Supp. 3d 462, 464 (D.D.C. 2015) ("[Other cases] provide[] at least some support for the contention that the *Laffey* Matrix reflects the market rate for attorneys engaged in FLSA litigation in the District of Columbia.").

---

[9] In *Eley*, the D.C. Circuit stated that "a fee applicant must 'produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation.'" *Eley v. District of Columbia*, 793 F.3d 97, 100 (D.C. Cir. 2015) (quoting *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984)). The decision in *Eley* required the fee applicant to do more than point to the applicable Laffey matrix. *Id.* at 104–05. However, the D.C. Circuit later clarified in *Salazar* that the applicants in *Eley* faced a higher burden because defendants had shown that hourly fees were generally lower in the IDEA litigation context. *Salazar ex rel. Salazar v. District of Columbia*, 809 F.3d 58, 64 (D.C. Cir. 2015). In this case, because he is in default, Mr. Kimuell "identifies no such submarket" and "instead acquiesce[es] in the notion that the litigation at issue qualifies as complex federal litigation (as to which the Laffey Matrices apply)" and therefore the Laffey matrices may be more persuasive as to a reasonably hourly rate. *Id.*

In this case the Court need not exhaustively consider which matrix is more appropriate, because counsel's hourly rates are near or below the rates provided in both matrices.[10] The Court thus grants awards fees as requested by Ms. Sarceno Reyes and shown in the following table:

| Attorney | Hours Billed | Hourly Rate | Total |
| --- | --- | --- | --- |
| Ms. Lombardo | 3.1 | $440 | $1364 |
| Ms. Lombardo | 0.9 | $460 | $414 |
| Mr. Lieberman | 1.3 | $440 | $572 |
| Mr. Lieberman | 0.3 | $460 | $138 |
| Mr. Garcia | 1.1 | $295 | $324.50 |
| Mr. Garcia | 0.7 | $310 | $217 |
| Mr. Garcia | 1.9 | $325 | $617.50 |
| **Total $3647** | | | |

### C. Award of Costs

Ms. Sarceno Reyes requests that the Court reimburse her for $500.94 in costs, including the filing fee, process server, and postage. Pl.'s Mot. at 6, ECF No. 14. The Court finds that these costs are reasonable and compensable under the FLSA. *See* 29 U.S.C. § 216 (The court in such an action shall . . . allow [an award of] costs of the action."). The Court therefore will award Ms. Sarceno Reyes $500.94 in costs.

---

[10] The LSI Laffey matrix provided that a lawyer with 11-19 years of experience could bill $661 in 2016; and the USAO Laffey matrix provided that a lawyer with 16-20 years of experience could bill $504 in 2016. LSI Laffey Matrix, http://www.laffeymatrix.com/see.html; USAO Laffey Matrix, https://www.justice.gov/usao-dc/file/889176/download. Similarly, the LSI Laffey matrix provided that a lawyer with two years of experience could bill $343 in 2016, and the USAO Laffey matrix provided such a lawyer could bill $315 in 2016. LSI Laffey Matrix, http://www.laffeymatrix.com/see.html; USAO Laffey Matrix, https://www.justice.gov/usao-dc/file/889176/download. Therefore both Ms. Lombard and Mr. Lieberman billed somewhat below the maximum Laffey rate for lawyers with their experience. If Mr. Garcia billed slightly above, which is possible depending on when he began practicing law, the Court finds that is a harmless error in light of Ms. Lombard and Mr. Lieberman's rates.

## IV.  CONCLUSION

For the foregoing reasons, Plaintiff's motion for default judgment is **GRANTED**.  An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  September 1, 2017                                                                 RUDOLPH CONTRERAS
                                                                                                         United States District Judge